UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JACQUELINE SONNENFELD, | CASE NO. 3:25-cv-05225-DGE |
| Plaintiff, | |
| v. | ORDER DENYING MOTION TO REMAND (DKT. NO. 10) |
| SAFECO INSURANCE COMPANY OF AMERICA, | |
| Defendant. | |

## I    INTRODUCTION

This is an insurance contract action related to water damage in Plaintiff's home.  (*See* Dkt. No. 1-1.)  Defendant removed this action from Pierce County Superior Court on the basis of diversity jurisdiction.  (Dkt. No. 1.)  Before the Court is Plaintiff's Motion to Remand.  (Dkt. No. 10.)  The sole issue presented in the motion is whether Defendant's notice of removal was timely.  (*See id.*)  Because the basis for removal was not "unequivocally clear and certain" until Plaintiff responded in discovery that she was seeking more than $75,000 in damages,

Defendant's notice of removal was timely, and the motion is DENIED.  Each party will bear its own costs.

## II    BACKGROUND

Plaintiff resides in Graham, Washington and experienced water loss in her home, on or about July 10, 2024.  (Dkt. No. 1-1 at 2.)  She filed a claim with her home insurance, Defendant Safeco Insurance Co., which initially covered only part of the loss, taking the position that the water damage was occurring over an extended period of time and was thus subject to a $25,000 policy limit for "Water Seepage and Leakage Coverage".  (*Id.*, Dkt. Nos. 15 at 10, 11-5 at 2–3.) Defendant eventually agreed to waive that limit after Plaintiff served notice of an action under the Washington Insurance Fair Conduct Act (IFCA), making an additional payment of $27,029.84 on top of the previous $25,000 payment.  (Dkt. Nos. 15 at 6, 12; 11-9 at 2; 11-10 at 2.)  Plaintiff asserted Defendant did not fully indemnify the claimed loss and initiated this action in Pierce County Superior Court, filing her original complaint on October 4, 2024.  (*See* Dkt. No. 2-1.)  She filed an amended complaint on March 5, 2025.  (Dkt. No. 2-2.)

Neither the initial complaint nor the amended complaint state an amount in controversy. (*See* Dkt. Nos. 2-1; 2-2.)  The initial complaint makes a claim for "enhanced damages" under Washington Revised Code § 19.86.090, and the amended complaint also cites § 48.30.015, both of which authorize treble damages.  (*Compare* Dkt. No. 2-1 at 9 *with* Dkt. No. 2-2 at 10.)  The amended complaint asserts claims for declaratory judgment, breach of contract, violation of duty of good faith, negligent claims handling, Washington Consumer Protection Act, and the Washington IFCA.   (Dkt. No. 2-2 at 6–10.)

On March 10, 2025, Plaintiff answered a Request for Admission (RFA), in which she denied seeking damages less than $75,000 in the lawsuit.  (Dkt. No. 11-11.)  Defendant removed

1  to this Court on March 14, 2025.  (Dkt. No. 1.)  Plaintiff argues that Defendant's motion was

2  untimely under 28 U.S.C. § 1446(b) because Defendant had "actual notice that the amount in

3  controversy exceeded $75,000 months before filing its notice of removal."  (Dkt. No. 10 at 1.)

4  Plaintiff claims Defendant is trying to "manufacture a new removal window by serving a request

5  for admission on the amount in controversy[.]"  (*Id.*)  Defendant responds the removal is timely

6  because Defendant did not learn that the amount in controversy exceeded $75,000 until Plaintiff

7  responded to the RFA, and thus the 30-day window did not begin to toll until that time.  (*See*

8  Dkt. No. 14.)  Both parties seek costs for the motion.

9  ### III    ANALYSIS

10  A.  Law Governing Removal

11  Removal of an action from state to federal court is governed by 28 U.S.C. § 1446.  The

12  statute sets out two 30-day windows for removal.  The first provides 30-days from the service of

13  the complaint or summons, if the basis for removal is plain on the face of the complaint.

14  § 1446(b)(1).  But if the basis of removal is not apparent on the face of the complaint, the statute

15  provides:

16  > [I]f the case stated by the initial pleading is not removable, a notice of removal may be
   > filed within 30 days after receipt by the defendant, through service or otherwise, of a
17  > copy of an amended pleading, motion, order or other paper from which it may first be
   > ascertained that the case is one which is or has become removable.

18  28 U.S.C. § 1446(b)(3) (emphasis added).  The statue elaborates on the meaning of the phrase

19  "other paper":

20  > If the case stated by the initial pleading is not removable solely because the amount in
21  > controversy does not exceed the amount specified in section 1332(a), information relating
   > to the amount in controversy in the record of the State proceeding, or in responses to
22  > discovery, shall be treated as an "other paper" under subsection (b)(3).

23  28 U.S.C. § 1446(c)(3)(A) (emphasis added).

24

1    At issue here is whether there was enough information in the record for Defendant to

2    know, before the March 10, 2025 RFA, that Plaintiff was seeking more than $75,000 in damages.

3    Plaintiff identifies two potential bases for this information: that coverages in the policy were well

4    in excess of $75,000, and that Plaintiff was seeking treble damages.  (Dkt. Nos. 10 at 2; 16 at 2.)

5    B.  Analysis

6    Although both Parties rely on *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121

7    (9th Cir. 2013) (*see* Dkt. Nos. 10 at 6; 14 at 6), the standard that governs here is actually set out

8    in *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1091 (9th Cir. 2021).  *Roth* holds that the two 30-day

9    windows are not the exclusive time periods for removal.  As the court stated: "We hold that a

10   defendant who has not lost the right to remove because of a failure to timely file a notice of

11   removal under § 1446(b)(1) or (b)(3) may remove to federal court when it discovers, based on its

12   own investigation, that a case is removable."  *Roth*, 720 F.3d at 1123.  That is not applicable

13   here, as the issue is not whether the case became removable based on Defendant's own

14   investigation prior to losing the right to remove.

15   Rather, it is *Dietrich* that provides the standard for when the 30-day window starts to toll

16   and controls this case.  Dietrich speaks of two "pathway[s]" to removal, the "first pathway"

17   being information on the face of the complaint, § 1446(b)(1), and the "second pathway" being

18   the "pleading, motion, or other paper" under § 1446(b)(3).  *Dietrich*, 14 F.4th at 1090.  As to that

19   "second pathway," *Deitrich* holds in plain terms that "[t]hat pathway's removal clock does not

20   start until a paper makes a ground for removal 'unequivocally clear and certain.'"  *Id.* at 1091.

21   Thus the "unequivocally clear and certain" standard applies here.

22   And the information Plaintiff cites as providing a basis for removal before the March 10,

23   2025 RFA is anything but "unequivocally clear and certain."  As to the first asserted ground,

24

coverage limits under the policy and specifically the "Additional Living Expenses" (ALE) limit of $105,200 (*see* Dkt. No. 10 at 2), it would hardly be clear to a reasonable party that Plaintiff would be seeking damages up to the maximum coverage amounts.  For instance, Plaintiff's reply states "Safeco's own October 2024 payment of $53,977.94 after re-evaluating the claim, and its acknowledgement of ALE benefits potentially up to $105,000, underscore Safeco's awareness that the stakes far surpassed the federal jurisdictional threshold." (Dkt. No. 16 at 2.)  But the payment figure Plaintiff cites, $53,977.94, is of course less than the jurisdictional threshold of $75,000 (nor is it a recoverable damage, as it is money already *paid* to Plaintiff), and the fact that the policy authorized benefits "*potentially* up to $105,000" is not a claim that Plaintiff is seeking or entitled to damages in that amount.  Indeed, the exhibit cited by Plaintiff in support of that proposition is an email from a Safeco claims specialist to Plaintiff's counsel dated October 25, 2024, in which the specialist states that a payment of $27,029.84 was made and "[a]dditionally, Additional Living Expenses may be reviewed, if needed.  The limit on the policy is $105,200.00 per incident." (Dkt. No. 11-10 at 2.)  There mere invocation of the policy limit is not an unequivocal and clear statement of the damages that would be at issue in litigation.

The second asserted basis, treble damages by statute, fares no better.  Plaintiff argues that "Plaintiff's complaint, IFCA notice, and subsequent communications plainly alleged claims that would place the amount in controversy above $75,000, including for treble damages and attorney's fees[.]" (Dkt. No. 16 at 2) (citing *Olympic Steamship Co. v. Centennial Insurance Co.*, 811 P.2d 673 (1991), and Wash. Rev. Code § 48.30.015).  That statement is not supported by the record.  The complaint itself does not actually use the phrase "treble damages" anywhere, though it does request "enhanced damages pursuant to RCW 19.86.090 and RCW 48.30.015," two statutes that authorize treble damages.  (Dkt. No. 2-2 at 10.)  The motion states, "[o]n

October 25, 2024, after the lawsuit and IFCA notice had been served, defendant issued a new payment to plaintiff based on a new estimate of damages ($53,977.94)," and Plaintiff argues that "Safeco had all the information it needed by the Fall of 2024, including its own estimate valuing the claim near $54,000, a formal IFCA notice, and a complaint asserting statutory claims that routinely push these cases well over the jurisdictional threshold." (Dkt. No. 10 at 4, 8.) But Plaintiff cites no authority for the proposition that amounts *paid* are damages subject to trebling—which makes little sense. Indeed, both § 19.86.090 and § 48.30.015 use the phrase "actual damages sustained" to describe the damages recoverable. If Plaintiff believes she suffered loss not yet compensated, it is still unclear to the Court from a review of the record what that amount is, and so the Court cannot say that it would have been "unequivocally clear and certain" to Defendant prior to the March 10, 2025 RFA that Plaintiff sought damages in excess of $75,000. Therefore, the Court finds that the 30-day window under § 1446(b)(3) began to toll on March 10, and Defendant's removal on March 14 was timely.

The Court notes that this result is consistent with similar cases finding that removal was timely. In *Landry v. Cross Country Bank*, the court held that the case first became removable on the date Plaintiff answered a request for admission and "for the first time stated that the amount in controversy exceeds $75,000." 431 F. Supp. 2d 682, 686 (S.D. Tex. 2003). In *Graves v. Standard Insurance Co.*, the court held removal by an insurer was timely because the defendant could not have known that the amount in controversy exceeded $75,000 until it received plaintiff's response in an interrogatory, seeking damages in excess of that amount. 66 F. Supp. 3d 920, 923–924 (W.D. Ky. 2014); *see also Bechtelheimer v. Cont'l Airlines, Inc.*, 755 F. Supp. 2d 1211, 1214 (M.D. Fla. 2010) (same, as to airline not knowing that damages exceeded $75,000 until interrogatory indicated medical expenses in excess of that amount). And in *Dietrich* itself,

the Ninth Circuit held that the 30-day window did not begin to run until plaintiff served an

amended response to defendant's discovery requests, stating for the first time unequivocally that

the alleged exposure to asbestos occurred during plaintiff's service in the U.S. Marine Corps,

making the case removable under the federal officer removal statute.  14 F.4th at 1095.  Based on

these precedents, the Court concludes removal was timely.

      C.  <u>The Court Will Not Award Costs</u>

      Plaintiff seeks costs under 28 U.S.C. § 1447(c), which provides that if remand is granted

the court may award costs.  (Dkt. No. 10 at 8.)  Since the Court denies the motion to remand, that

request is moot.  Defendant seeks costs under 28 U.S.C. § 1927, which provides for costs as a

sanction for vexatious litigation.  Defendant argues Plaintiff's motion is frivolous and vexatious.

(Dkt. No. 14 at 9.)  The Ninth Circuit has stated that sanctions under this section "must be

supported by a finding of subjective bad faith" and that "[b]ad faith is present when an attorney

knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the

purpose of harassing an opponent."  *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 436 (9th

Cir. 1996).  While Plaintiff's motion was insufficiently supported, the Court does not find bad

faith, and declines to order a sanction.

# IV    CONCLUSION

The motion to remand is DENIED, each side to bear its own costs.

Dated this 9th day of May, 2025.

David G. Estudillo
United States District Judge